IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| TINA KEENE,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>　　　　　Defendant. | CASE NO. 04-5479FDB<br><br>REPORT AND<br>　RECOMMENDATION<br><br>Noted for September 23, 2005 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Magistrates Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been fully briefed. After reviewing the record, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was 34 years old at the time of her alleged disability onset date of June 5, 2001 (Tr. 75). She did not complete high school but she obtained a GED (Tr. 91). She worked in the past as a teacher's aide, bartender, case worker, care giver, blackjack dealer, and fish processor (Tr. 25, 94).

Plaintiff filed her applications for disability insurance and SSI disability benefits on  December

REPORT AND RECOMMENDATION - 1

28, 2001, alleging that she was disabled since June 5, 2001, due to right and left carpal tunnel syndrome, tendonitis, and neck pain (Tr. 85). These applications were denied at the initial level (Tr. 59-62, 268-71) and upon reconsideration (Tr. 65-67, 273-75). Plaintiff then requested a hearing before an administrative law judge (ALJ) (Tr. 68). On October 14, 2003, the ALJ conducted a hearing at which he heard testimony from three witnesses: Plaintiff, who was represented by an attorney; Jay Keene, Plaintiff's husband; and Linda Tanouye, a vocational expert (Tr. 29-56). On May 8, 2004, the ALJ issued a decision finding that Plaintiff retained the residual functional capacity to perform her past relevant work and in the alternative, could perform work that exists in substantial numbers in the national economy and therefore, was not disabled (Tr. 14-25). The Appeals Council denied Plaintiff's request for review (Tr. 7-10), making the ALJ's decision the Commissioner's final decision. See 20 C.F.R. §§ 404.981, 416.1481, 422.210.

## DISCUSSION

The Court may set aside the Commissioner's denial of Social Security disability benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g); Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). We consider the evidence as a whole, weighing both evidence that supports, and evidence that detracts from the Commissioner's conclusion. Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996). Credibility determinations are the province of the ALJ. Fair v. Bowen, 885 F.2d 597, 603 ( 9th Cir. 1989).

**Sequential Evaluation Process**

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable

REPORT AND RECOMMENDATION - 2

physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §416.905.

In evaluating Plaintiff's claim, the ALJ followed the five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security regulations. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920 (2000).  The Plaintiff has the burden of proof at steps one through four; at step five the burden shifts to the Commissioner to show that Plaintiff can perform work that exists in significant numbers in the national economy.

**Findings of Administrative Law Judge**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset of disability date (Tr. 24, Finding 2). See 20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the ALJ found that Plaintiff had severe impairments of carpal tunnel syndrome, epicondylitis, and shoulder strain (Tr. 19). See 20 C.F.R. §§ 404.1520(c), 416.920(c).  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any of the impairments in the Listings (Tr. 24, Finding 4). See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  The ALJ determined that Plaintiff the following residual functional capacity: she could lift 20 pounds occasionally and 10 pounds frequently; sit and stand for six hours in an eight-hour day; occasionally reach and handle; and could not perform repetitive motions with the wrist, fingering, grasping or fine manipulation (Tr. 25, Finding 6). See 20 C.F.R. §§ 404.1520(d), 404.1545, 416.920(e), 416.945.  At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a teacher's aide (Tr. 25, Finding 7). See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  Alternatively, at step five, based on the testimony of a vocational expert, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy as an informational clerk or security guard monitoring

REPORT AND RECOMMENDATION - 3

security screens (Tr. 25, Finding 9). See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Plaintiff alleges the following nine errors:1) The ALJ erroneously determined that Ms. Keene's headaches and cervical impairment were not severe; 2) The ALJ improperly rejected the medical opinion of Ms. Keene's treating physicians and did not provide clear and convincing reasons for disregarding those opinions; 3) The ALJ improperly rejected or did not consider the combined effect and severity of Ms. Keene's exertional and non-exertional impairments; 4) The ALJ failed to include all of Ms. Keene's impairments in his hypothetical questions to the vocational expert and improperly discounted the vocational expert's testimony regarding the effect that absenteeism would have on her ability to remain competitive for employment; 5) The ALJ did not consider and apply applicable Social Security Rulings in deciding Ms. Keene's claim; 6) The ALJ improperly disregarded Ms. Keene's subjective complaints and fails to provide legitimate reasons for rejecting her subjective complaints;7) The ALJ fails to resolve the conflict between the vocational expert testimony and the Dictionary of Occupational Titles; 8) The ALJ improperly discounted lay witness testimony and statements; and 9) There is new and material evidence that the ALJ failed to consider before issuing his decision.

### A. THE ALJ PROPERLY EVALUATED PLAINTIFF'S "SEVERE" IMPAIRMENTS

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996).  An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).  The  Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe."  According to the Commissioner's regulations, "an impairment is not severe if it  does not significantly limit [the claimant's] physical ability to do basic work activities,"  20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991).  Basic work activities are "abilities and aptitudes necessary to do most jobs,

REPORT AND RECOMMENDATION - 4

including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85- 28 ("SSR 85-28").  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that  has "no more than a minimal effect on an individuals ability to work."  *See* SSR 85-28; <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir.1988)(adopting SSR 85-28). Plaintiff bears the burden of showing that her impairments are severe. *See* <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1159 (9th Cir. 2001).

Here, Plaintiff has not met her burden of showing that her headaches and neck complaints were severe impairments. The ALJ noted that Plaintiff had been injured in the head in 1996 and received treatment for headaches in 1997 (Tr. 19). However, after her alleged onset date of June 2001, Plaintiff only complained of headaches to her physicians once, in August 2003 (Tr. 19, 356). The ALJ noted that Plaintiff testified that she was undergoing additional testing shortly after the hearing for evaluation of her headaches and he left the record open for her to submit that information. Plaintiff, however, did not submit any additional documentation (Tr. 20).  Plaintiff also argues that her inability to maintain attendance at her part-time job after her alleged onset date was due to headaches and references her time sheets from that job (Pl.'s Op. Br. at 9, 290-325). However, these time sheets do not reflect that Plaintiff missed work due to headaches; they only show that Plaintiff missed some work. Further, her employer stated on several occasions that Plaintiff's attendance was "above average" or "satisfactory" (Tr. 289, 291, 297, 303) and on only one occasion did the employer indicate that Plaintiff's attendance "needed improvement" (Tr. 293).

As further explained below, the court finds the ALJ did not err in his evaluation of the medical evidence nor in his evaluation of plaintiff's testimony or credibility.   Accordingly, the ALJ did not err when he found Ms. Keene's allegations of headache and neck pain did not constitute a severe impairment.

**B. THE ALJ PROPERLY EVALUATED THE TREATING PHYSICIAN'S, (DR. COLKITT'S) OPINION**

REPORT AND RECOMMENDATION - 5

Whether a medical source's opinion will be given significant weight depends on such things as the length of the examining relationship; treatment relationship including the nature and extent of the treatment relationship; the degree to which the treating source's opinion is supported by medical signs and laboratory findings; and its consistency with the rest of the evidence. See 20 C.F.R §§ 404.1527(d), 416.927(d). The ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and reject the uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

Here, the ALJ questioned Dr. Colkitt's September 2003 opinion that Plaintiff was limited to lifting only five pounds occasionally and one to two pounds frequently; could never crawl; and could finger and reach occasionally with her right arm and hand (Tr. 376). The ALJ specifically questioned this opinion because it was a drastic departure from Dr. Colkitt's previous opinions and she provided no explanation for the change. Dr. Colkitt opined in March 2002, five months after Plaintiff's carpal tunnel release surgery, that Plaintiff could lift 10 pounds occasionally and five pounds frequently (Tr. 136). In April 2002, Dr. Colkitt noted Plaintiff's report of "marked improvement in her shoulder symptoms" and she indicated that Plaintiff could lift 10 pounds occasionally and two to three pounds frequently (Tr. 428). In late April 2002, Dr. Colkitt noted that Plaintiff stated that "overall her shoulders are much improved with physical therapy, decreased pain and increased range of motion" (Tr. 131). On May 28, 2002, Dr. Colkitt opined that Plaintiff was near maximal medical improvement (Tr. 373) and that she could lift 15 pounds occasionally and five pounds frequently (Tr. 374). On August 29, 2002, Dr. Colkitt opined that Plaintiff was restricted to lifting 20 pounds occasionally and 15 pounds frequently (Tr. 368). Dr. Colkitt noted Plaintiff's statements to her in December 2002 that she could not lift more than 35 pounds (Tr. 362). At that time, Dr. Colkitt opined that Plaintiff's symptoms would likely reoccur with repetitive

REPORT AND RECOMMENDATION - 6

1  activity of 10 to 12 hours per day (Tr. 362). She stated that she would "place patient back on full

2  duty, eight hours per day, with no repetitive activity greater than two hours before having a

3  15-minute break" (Tr. 362).

4      In addition, Dr. Colkitt reviewed Ms. Steffa's recommendations that Plaintiff could lift

5  50 pounds or less occasionally and 35 pounds less frequently, below shoulder height (Tr. 353).

6  Above her shoulder, Plaintiff could lift 35 pounds occasionally and 20 pounds or less frequently.

7  Plaintiff could handle, finger, and grasp on a frequent to continuous basis. Ms. Steffa recommended

8  that Plaintiff not perform highly repetitive wrist motion, handling, fingering, or grasping with either

9  hand (Tr. 353). She also recommended that Plaintiff be allowed to self pace and rotate tasks (Tr.

10  353). Dr. Colkitt reviewed Ms. Steffa's report on May 12, 2003 and indicated that she would plan on

11  closing Plaintiff's worker's compensation claim (Tr. 357).

12      Without explanation, Dr. Colkitt opined in September 2003 that Plaintiff was limited to lifting

13  only five pounds occasionally. The ALJ questioned this departure from her earlier recommendations,

14  noted above, without any indication of a significant change in Plaintiff's

15  condition.  This is a rational interpretation of the evidence and therefore, the ALJ's rejection of the

16  Dr. Colkitt's is properly supported.

17  ***C. THE ALJ PROPERLY DISCREDITED PLAINTIFF'S COMPLAINTS OF TOTAL DISABILITY***

18      <u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit

19  authority on evaluating plaintiff's subjective complaints.   <u>Bunnell</u> requires the ALJ findings to be

20  properly supported by the record, and "must be sufficiently specific to allow a reviewing court to

21  conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not

22  'arbitrarily discredit a claimant's testimony regarding pain.'" <u>Id</u>. at 345-46 (quoting <u>Elam v. Railroad

23  Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991)).  An ALJ may reject a claimant's subjective

24  complaints, if the claimant is able to perform household chores and other activities that involve many

25  of the same physical tasks as a particular type of job. <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir.

26  REPORT AND RECOMMENDATION - 7

1989) However, as further explained in Fair v. Bowen, *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.  Similarly, the ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to each witness whose testimony s/he rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d  915, 919 (9th Cir. 1993).

Here, the ALJ discredited Plaintiff's testimony for two reasons. First, the objective medical evidence did not support her claims of disabling symptoms (Tr. 22).  Second, the ALJ found that Plaintiff's testimony was inconsistent with the statements she made to her providers (Tr. 22).

With respect to the medical evidence, the ALJ noted that there was no evidence of carpal tunnel symptoms after April 2002 (Tr. 22). Indeed, the testing of Plaintiff's left hand by Dr. Niakan on April 26, 2002 was normal (Tr. 231). Dr. Niakan conducted a right side nerve conduction velocity test on February 6, 2002 and noted "significant" improvement compared to the study conducted in July 2001, prior to the surgery (Tr. 232). As noted above, the ALJ explained that in December 2002, Dr. Colkitt placed Plaintiff "back on full duty, eight hours per day, with no repetitive activity greater than two hours before having a 15-minute break" (Tr. 362).

With respect to the inconsistencies in Plaintiff's statements, in May 2002, Plaintiff reported that she had aggravated her right elbow after mowing the lawn and playing Frisbee, activities inconsistent with her allegations at the hearing of being unable to grasp objects or perform even light household chores (Tr. 373). Her testimony was also inconsistent with her statements to Dr. Colkitt of improvement of her symptoms, such as in March 2002 when she reported "marked improvement in all symptoms" (Tr. 135); in April 2002 when Plaintiff reported "marked improvement in her shoulder symptoms although the left is hurting a bit more than the right" (Tr. 134); her report in late April 2002 to Dr. Colkitt that "overall her shoulders are much improved with physical therapy,

REPORT AND RECOMMENDATION - 8

decreased pain and increased range of motion" (Tr. 131); her statement to Dr. Colkitt in November 2002, that her dysesthesias in her upper extremities had resolved (Tr. 364); and her statement to Dr. Colkitt in December 2002 that she could not lift more than 35 pounds (Tr. 362). In sum, the ALJ evaluation of Plaintiff's credibility is properly supported by the record.

The ALJ considered the testimony of Mr. Keene and Ms. Parsons but rejected it as it conflicted with the information provided by Plaintiff to her medical providers (Tr. 22-23). As demonstrated above, Plaintiff's statements to her providers show that she was functioning at a much higher level than alleged by herself and her lay witnesses. Accordingly, the ALJ also properly rejected the lay witness statements that were inconsistent with Plaintiff's own statements to her providers as well as inconsistent with the objective medical findings.

### D. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY AND STEP FIVE FINDINGS WERE PROPER

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a claimant did in the past. 20 C.F.R. § 404.1520(e). At step-five the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity. *See* Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995). In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Plaintiff's arguments that the ALJ erred in evaluating Plaintiff's RFC and that the ALJ erred when he concluded Plaintiff could do work in the national economy are based on the premise that the ALJ erred when he evaluated the medical evidence and Plaintiff's subjective complaints. As set forth

REPORT AND RECOMMENDATION - 9

above, the ALJ properly evaluated the medical evidence and testimony.  Therefore, his finding that Plaintiff could perform work that did not involve lifting more than 20 pounds occasionally and 10 pounds frequently; did not require more than occasional reaching and handling, and did not require repetitive motions with the wrists, fingers, grasping or fine manipulation is supported by substantial evidence (Tr. 24).

Based on the testimony of Ms. Tanouye, the vocational expert, the ALJ found that Plaintiff could perform work at step five as a security guard monitoring a security screen (Dictionary of Occupational Titles (DOT) number 379.367-010) and an information clerk (DOT number 237.367-018).  Defendant acknowledged that Ms. Tanouye's testimony about the amount of reaching and handling required by the information clerk position is inconsistent with the DOT.  However, according to Ms. Tanouye and the DOT, the security guard monitoring a security screen position does not require more than lifting up to 10 pounds occasionally and a negligible amount of lifting frequently and does not require and handling, reaching, or fingering.  The ALJ noted that there were 45,000 positions as a security guard in the national economy (Tr. 24) and Ms. Tanouye also testified that there were 900 of these positions available in the state of Washington (Tr. 51).  Accordingly, the ALJ's findings at step five support his conclusion that Plaintiff has not met her burden of showing that she is disabled.

### E. PLAINTIFF FAILS TO SHOW REMAND IS NECESSARY TO CONSIDER NEW EVIDENCE

Under the Social Security Act, a court may order the administration to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).  Thus, the plaintiff must show that the proffered new medical evidence is: "(1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.  The concept of materiality requires in addition, a reasonable possibility that the new

REPORT AND RECOMMENDATION - 10

1  evidence would have influenced the [Commissioner] to decide the claimant's application differently.

2  Finally, claimant must show (3) good cause for [his] failure to present the evidence earlier."  Tirado

3  v. Bowen, 842 F.2d 595, 597 (2d Cir.1988) (internal citations omitted); see Sanchez v. Secretary of

4  Health and  Human Serv., 812 F.2d 509, 511 (9th Cir.1987) and Booz v. Secretary of Health &

5  Human Services, 734 F.2d 1378, 1380 (9th Cir. 1984).

6       Plaintiff alleges she submitted new evidence on February 4, 2004 which was not reviewed by

7  the ALJ.  This evidence, which consists of reports from Dr. Steege, Dr. Wicks, Olympic Family

8  Practice, employment records, and Peninsula Medical Group,  is contained in the administrative

9  record.  Tr. 288-325, 400-426.  There is no indication that the ALJ did not consider this evidence

10 which was part of the record when he made his decision, which is dated May 8, 2004.  Accordingly,

11 the ALJ considered all the evidence in the record and Plaintiff has not submitted new evidence that

12 warrants additional review in this case.

13 **CONCLUSION**

14 The Commissioner 's decision is supported by substantial evidence in the record and free of

15 legal error.  Accordingly, the decision of the Commissioner is AFFIRMED. Pursuant to 28 U.S.C. §

16 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days

17 from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file

18 objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474

19 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set

20 the matter for consideration on **September 23, 2005**, as noted in the caption.

21      DATED this 6th day of September, 2005.

22     */s/ J. Kelley Arnold*
    J. Kelley Arnold
23     U.S. Magistrate Judge

24

25

26 REPORT AND RECOMMENDATION - 11